133 So.2d 755 (1961)
Ray SANDSTROM, William T. Quick, Attorneys, and all other persons similarly situated, Appellants,
v.
CITY OF FORT LAUDERDALE, Florida, a municipal corporation, Appellee.
No. 2207.
District Court of Appeal of Florida. Second District.
October 11, 1961.
Rehearing Denied November 6, 1961.
*756 Sandstrom & Hodge, Fort Lauderdale, for appellants.
Francis K. Buckley and Ronald B. Sladon, Fort Lauderdale, for appellee.
KANNER, Judge.
Plaintiffs, objecting to a $50 per person license tax levied pursuant to chapter 23 of the municipal ordinances of the City of Fort Lauderdale upon attorneys having offices within the city limits, filed suit on their own behalf as attorneys practicing there and on behalf of "all other persons similarly situated" to enjoin enforcement of the ordinance insofar as it imposed the protested tax. The court by final decree denied injunction and dismissed the complaint. Plaintiffs improvidently appealed to the Supreme Court, which, in conformity with rule 2.1, subd. a(5) (d), Florida Appellate Rules, 31 F.S.A., ordered the cause transferred to this court as the one having appellate jurisdiction.
By the complaint, it was alleged, essentially, that Article V, section 23, of the constitution of this state places exclusive jurisdiction of the admission and regulation of attorneys in the Supreme Court; that plaintiffs are required to be members of the Florida Bar, are required to pay annual dues of $25, and are subject to regulation by it; that the sum of $50 per plaintiff as occupational license is arbitrary and capriciously fixed, with no relation to any regulation of plaintiffs, since the regulation is exclusively in the Supreme Court. It was further complained that defendant furnishes no facilities or other services to plaintiffs as does the Florida Bar; that in view of annual Florida Bar dues of $25, county and state occupational licenses of $25.25, and the amounts assessed for such licenses in other municipalities of the county, the sum required is excessive, unreasonable, and arbitrary, so that the ordinance so far as it fixes the amount of the occupational license fee is void. Asserting that defendant had threatened to issue warrant of arrest of plaintiffs for violation of the ordinance because of nonpayment of the license fee, plaintiffs prayed that the court issue an injunction, both temporary and permanent, restraining the defendant from enforcing the ordinance insofar as it exacts the occupational license in the named sum.
The chancellor through his final decree determined that the ordinance was enacted for the purpose of raising revenue and not for regulation under the police power, that the occupational license tax was neither excessive, unreasonable, nor arbitrary, and that the ordinance did not conflict with the constitutional provision, Article V, section 23, F.S.A.
Plaintiffs' assault upon the ordinance in this appeal urges that it is regulatory and hence should be restricted in amount to the costs incident to the regulation required, that it is unreasonable in the amount of the license fee imposed, and that it is in contravention of Article V, section 23, of the Constitution of Florida, relating to the admission and discipline of attorneys.
Section 23-40 (189) of the municipal ordinance provides in part that each individual engaged in certain professions must acquire a separate license for each classification desired, that such license shall be nontransferable, and that the fee shall be $50. The subsection lists 26 separate professions, including that of attorney, and provides a "catchall" heading designated "unclassified profession," with the same fee of $50 being required for each.
*757 The charter of the City of Fort Lauderdale specifically provides that the city may "tax" professions. It states that, as to occupational licenses, the city shall have full power and authority to license and tax any and all businesses, occupations, and professions carried on within the corporate limits of the city, to classify and define them for the purpose of imposing occupational license taxes or fees, and to impose on such classifications reasonable occupational license taxes. It is moreover provided that the amount of such license fees shall not be dependent upon nor related to either the general state occupational license for similar classifications or the amounts allowed under the general laws for municipalities incorporated under the general state law.
A municipal license for revenue and one for regulation under the police power are set apart by distinguishing characteristics. A license for revenue is a tax and should be construed under the tenets and rules governing the authority to tax, while one for regulation is under the police power and is concerned with the protection of the health, morals, safety, or general welfare of a community. Where power to license is granted for revenue purposes, the amount of the tax is within the discretion and judgment of the municipal authorities; if granted merely for regulation under the police power, the construction is narrowed to exercise of the power as a means of regulation and does not fundamentally embrace use of it for revenue purposes. 23 Fla.Jur., Municipal Corporations, section 150, p. 161
It is the view of this court that the chancellor, in classifying the ordinance as a revenue and not a regulatory one, did not err.
Judicial intervention as to the amount imposed by a municipality for license tax requirement is limited. A court will not interfere unless the amounts assessed are so unequal and unjustly discriminatory by comparison with like conditions as to deny the equal protection of the laws or unless they are so unreasonably large as to constitute an arbitrary and oppressive exercise of governmental power. Gillis v. Croft, 1926, 92 Fla. 267, 109 So. 446.
It neither appears that the fee in question is discriminatory nor that it is excessive. Instead, it applies equally to all attorneys who have their offices within the corporate limits of the city; and its nonapplicability to those who may use the city's facilities but have their offices outside the city limits does not result in denial to plaintiffs of equal protection of the law. As to reasonableness of the tax, the 1938 case of Smith v. City of Tampa, 136 Fla. 98, 186 So. 674, relied upon by plaintiffs, is not controlling. There, a license tax of $60 per year upon certain professions, including that of attorney, was held excessive and the revenue measure deemed on its face and as a matter of law arbitrary and unreasonable and therefore invalid. However, not only were monetary standards, costs, and economic conditions twenty years ago and now greatly disproportionate, but the fee involved an even higher figure than the one here protested.
The sections of chapter 23, insofar as they relate to attorneys, criticized by plaintiffs as being indicative by their wording of regulatory measures, are of a nature not inconsistent with reasonable revenue collection procedures. In this category, to illustrate, are such matters as the form of the application, the requirement for prominent display of the license, the vesting of authority in license inspectors to enter offices of members of the professions described so as to ascertain whether the licenses required have been obtained and are being displayed, and a provision for fines and punishment in the event the ordinance is not complied with.
As to plaintiffs' assertion that certain other sections of the ordinance vest regulatory power to revoke a municipal license *758 in such officials as the mayor and the chief of police, the matter was not set out with particularity in the complaint or assignments of error. Notwithstanding this, we shall consider it. Plaintiffs state that they have been threatened with arrest for failure to pay the license fee, but they make no contention that they have been subjected to or threatened with revocation of a license either by the mayor or by the chief of police. Indeed, a careful perusal of sections 23-20 and 23-30, cited by plaintiffs to support their position, shows that they do not appertain to attorneys. Section 23-20 concerns hotels, rooming houses, and the like, while the title of section 23-30 is "Same  Revocation of license," adverting to "such occupational license" and referring back ultimately to the sections which deal with fortune telling, clairvoyance, and licensed and unlicensed private detectives.
Finally, plaintiffs insist that under Article V, section 23, of the Florida Constitution[1] whatever power the legislature had with respect to regulation of attorneys as to their admission or discipline was abrogated and that a municipality thus has no delegated authority to enact ordinances either prescribing or proscribing actions of attorneys in the practice of law. However, we are in accord with those jurisdictions which have held that a judicial department's power to control admission and regulation of attorneys in the practice of law does not preclude the exacting by a city of a municipal license tax upon attorneys. See City of San Mateo v. Mullin, 1943, 59 Cal. App.2d 652, 139 P.2d 351; Dreidel v. City of Louisville, 1937, 268 Ky. 659, 105 S.W.2d 807; Davis v. Ogden City, 1950, 117 Utah 315, 215 P.2d 616, 16 A.L.R.2d 1208, Id., 118 Utah 401, 223 P.2d 412; Lister v. City of Fort Smith, 1939, 199 Ark. 492, 134 S.W.2d 535; Newlin v. Stuart, 1938, 273 Ky. 626, 117 S.W.2d 608; Ex Parte Galusha, 1921, 184 Cal. 697, 195 P. 406. See also Annotation, 16 A.L.R.2d 1228, and McQuillin, Municipal Corporations, 3rd Edition, Volume 9, section 26.130, p. 293.
Here, the license tax under the municipal ordinance is assessed upon the "business" of practicing law. Conversely, the constitutional jurisdiction reposed in the Supreme Court is over admission to and discipline of persons admitted to the practice of law.
When a municipal ordinance is attacked, the one making the onset has the burden of establishing his contentions. This plaintiffs have not done.
Affirmed.
ALLEN, Acting C.J., and HALL, W. TROY, Jr., Associate Judge, concur.
NOTES
[1] "Admission and discipline of attorneys.  The supreme court shall have exclusive jurisdiction over the admission to the practice of law and the discipline of persons admitted. It may provide for an agency to handle admissions subject to its supervision. It may also provide for the handling of disciplinary matters in the circuit courts and the district courts of appeal, or by commissions consisting of members of the bar to be designated by it, the supreme court, subject to its supervision and review."